IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PINCHAS ELIYAHU RAUL, Individually and on Behalf of All Others Similarly Situated,<br><br>  Plaintiff,<br><br>  v.<br><br>MIDSOUTH BANCORP, INC., JAMES MCLEMORE, LEONARD Q. ABINGTON, JAMES R. DAVIS, JR., JAKE DELHOMME, MILTON B. KIDD III, TIMOTHY J. LEMOINE, DAVID MICHAEL KRAMER, ANDREW G. HARGRODER, and WILLIAM F. GRANT III,<br><br>  Defendants. | Civil Action No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Pinchas Eliyahu Raul ("Plaintiff") by and through his undersigned attorneys, brings this class action on behalf of himself and all others similarly situated, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by MidSouth Bancorp, Inc. ("MidSouth Bancorp" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning MidSouth Bancorp and the Defendants.

## SUMMARY OF THE ACTION

1. Plaintiff brings this class action on behalf of the public shareholders of MidSouth Bancorp against the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed sale of the Company to Hancock Whitney Corporation ("Hancock Whitney" or "Parent") (the "Proposed Transaction").

2. On April 30, 2019, MidSouth Bancorp entered into an Agreement and Plan of Merger (the "Merger Agreement") with Hancock Whitney, whereby MidSouth Bancorp will merge with and into Hancock Whitney, with Hancock Whitney as the sole surviving corporation in the merger (the "Merger"). Immediately following the completion of the Merger or at such later time as Hancock Whitney may determine in its sole discretion, MidSouth Bank, N.A., a wholly owned bank subsidiary of MidSouth ("Merger Sub"), will merge with and into Hancock Whitney Bank, a wholly owned bank subsidiary of Hancock Whitney (which we refer to as the "Bank Merger"), with Hancock Whitney Bank as the surviving entity in the Bank Merger.

3. Pursuant to the terms of the Merger Agreement, MidSouth Bancorp shareholders will receive 0.2952 shares of Hancock Whitney per share of MidSouth Bancorp in a stock-for-stock transaction. The consummation of the Proposed Transaction is subject to certain closing conditions, including the approval of the stockholders of MidSouth Bancorp.

4. On August 13, 2019, in order to convince MidSouth Bancorp's stockholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading proxy statement with the SEC (the "Proxy Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

5. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against MidSouth Bancorp and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to MidSouth Bancorp stockholders before the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

7. This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District. Additionally, the Company's common stock trades on the New York Stock Exchange ("NYSE"), which is headquartered in this District.

## THE PARTIES

9. Plaintiff is, and has been at all times relevant hereto, the owner of MidSouth Bancorp common stock.

10. Defendant MidSouth Bancorp is a Louisiana corporation with its principal executive offices located at 102 Versailles Boulevard, Lafayette, Louisiana 70501. The Company's common stock is traded on the NYSE under the symbol "MSL."

11. Defendant James McLemore ("McLemore") is and has been the Company's Chief Executive Officer and a member of the Board at all times during the relevant time period.

12. Defendant Leonard Q. Abington ("Abington") is and has been a director of the Company at all times during the relevant time period.

13. Defendant James R. Davis, Jr. ("Davis") is and has been a director of the Company at all times during the relevant time period.

14. Defendant Jake Delhomme ("Delhomme") is and has been a director of the Company at all times during the relevant time period.

15. Defendant Milton B. Kidd III ("Kidd") is and has been a director of the Company at all times during the relevant time period.

16. Defendant Timothy J. Lemoine ("Lemoine") is and has been a director of the Company at all times during the relevant time period.

17. Defendant David Michael Kramer ("Kramer") is and has been a director of the Company at all times during the relevant time period.

18. Defendant Andrew G. Hargroder ("Hargroder") is and has been a director of the Company at all times during the relevant time period.

19. Defendant William F. Grant III ("Grant") is and has been a director of the Company at all relevant times during the relevant time period.

20. Defendants McLemore, Abington, Davis, Delhomme, Kidd, Lemoine, Kramer, Hargroder, and Grant, are collectively referred to herein as the "Individual Defendants."

21. The Individual Defendants, along with Defendant MidSouth Bancorp, are collectively referred to herein as "Defendants."

## CLASS ACTION ALLEGATIONS

22. Plaintiff brings this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public shareholders of MidSouth Bancorp (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any of the Defendants.

23. This action is properly maintainable as a class action for the following reasons:

a. The Class is so numerous that joinder of all members is impracticable. As of August 12, 2019, there were 16,732,149 MidSouth Bancorp common shares outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

b. Questions of law and fact are common to the Class, including, among others: (i) whether Defendants have violated Sections 14(a) of the Exchange Act by misrepresenting or omitting material information concerning the Proposed Transaction in the Proxy Statement; (ii) whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and (iii) whether Plaintiff and the Class would be irreparably harmed if the Proposed Transaction is consummated as currently contemplated and pursuant to the Proxy Statement as currently composed.

  c. Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class.

  d. Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class.

  e. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class.

  f. A class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

24. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, preliminary and final injunctive relief on behalf of the Class as a whole is entirely appropriate.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

25. MidSouth Bancorp is a bank holding company that, through its subsidiary MidSouth Bank, N.A., provides community banking products and services to commercial and retail customers in the United States. The Company delivers a range of deposit products, such as interest-bearing and noninterest-bearing checking accounts, money market, savings accounts, investment accounts, and NOW account deposits, as well as time deposits, such as certificates of deposit; and commercial and industrial, commercial real estate, and consumer loans, as well as other loans secured by real estate.

**The Company Announces the Proposed Transaction**

26. On March 18, 2019, MidSouth Bancorp issued a press release announcing the Proposed Transaction. The press release stated in part:

**Hancock Whitney Corporation to acquire MidSouth Bancorp, Inc.
An in-market, low risk, high return transaction**

GULFPORT, Miss. (April 30, 2019) — Hancock Whitney Corporation ("Hancock Whitney") (NASDAQ: HWC), parent company of Hancock Whitney Bank, and MidSouth Bancorp, Inc. ("MidSouth") (NYSE: MSL), parent company of MidSouth Bank, N.A., announced today that they have entered into a definitive agreement for MidSouth to merge into Hancock Whitney in a stock-for-stock transaction.

"We are pleased to have MidSouth join the Hancock Whitney franchise", said John M. Hairston, President and CEO. "The merger fits perfectly with our stated strategies of adding scale and enhancing value through in-market, financially accretive, low-risk transactions that strengthen our current franchise and provide opportunities for future growth."

Consistent with Hancock Whitney's M&A strategy, the transaction is primarily an in-market acquisition of $1.7 billion in assets, with a balance sheet comprised of approximately $900 million in high-yielding loans, $1.4 billion of low-cost deposits and a footprint that allows for significant cost savings. MidSouth's franchise will provide enhanced opportunities for growth in several of our current markets, such as their home market of Lafayette, Louisiana, as well as opportunities for expansion in newer markets in Louisiana and Texas.

Jim McLemore, President and CEO of MidSouth commented, "We have much in common with Hancock Whitney, including a shared culture of client focus and relationship banking. This merger will provide our customers, employees, and shareholders the benefits of scale it would have taken years for us to accomplish independently."

Under the terms of the agreement, each share of MidSouth Bancorp, Inc. common stock will convert to the right to receive 0.2952 shares of Hancock Whitney Corporation common stock. Per the merger agreement, the conversion ratio reflects a per share value of $12.75 per MidSouth common share. The parties anticipate redeeming all of MidSouth's outstanding preferred stock at closing subject to receipt of applicable governmental approvals.

| Estimated Transaction Summary (projected at closing; excludes merger costs) | |
|---|---|
| Price to adjusted tangible book value (TBV) | 1.4x |
| Adjusted core deposit premium | 5% |
| EPS accretion (fully phased-in) | $0.13-$0.15 |
| TBV Dilution | less than 80bps |
| Cash Return on Invested Capital (ROIC) | >20% |

The transaction is expected to close with a simultaneous systems conversion in late third quarter of 2019. Pro forma information assumes 50%-55% cost savings (based on MidSouth's 2019/2020 street estimates), and is accretive to Hancock Whitney's EPS beginning in the first quarter of 2020.

The transaction is subject to the satisfaction of certain customary closing conditions including receipt of regulatory and MidSouth shareholder approval. Morgan Stanley & Co. LLC is serving as financial advisor to Hancock Whitney and Wachtell, Lipton, Rosen & Katz is serving as legal advisor. Sandler O'Neill + Partners, L.P. is serving as financial advisor to MidSouth and Troutman Sanders LLP is serving as legal advisor.

There is no conference call scheduled. A slide presentation related to the proposed transaction is included in Hancock Whitney's 8-K filing and is also posted under the "Presentations" tab in the "News and Market Data" section of the Investor Relations website at www.hancockwhitney.com/investors.

27. The Proposed Transaction is subject to approval by the shareholders of Midsouth Bancorp, as well as regulatory approvals.

## FALSE AND MISLEADING STATEMENTS AND/OR MATERIAL OMISSIONS IN THE PROXY STATEMENT

28. On August 13, 2019, the Company filed the Proxy Statement with the SEC. The Proxy Statement recommends that the Company's stockholders vote in favor of the Proposed Transaction.

29. Defendants were obligated to carefully review the Proxy Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's

shareholders to make informed decisions concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

### Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding Managements' Financial Projections

30. The Proxy Statement contains financial projections prepared by MidSouth Bancorp and Hancock Whitney in connection with the Proposed Transaction, but fails to provide material information concerning such.

31. The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[1] Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy.[2] One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

32. In order to make management's projections included in the Proxy Statement materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

---

[1] *See, e.g.*, Nicolas Grabar and Sandra Flow, Non-GAAP Financial Measures: The SEC's Evolving Views, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measuresthesecs evolving-views/; Gretchen Morgenson, Fantasy Math Is Helping Companies Spin Losses Into Profits, N.Y. Times, Apr. 22, 2016, available at http://www.nytimes.com/2016/04/24/business/fantasy-mathis-helping-companies-spin-ossesinto-profits.html?_r=0.

[2] Non-GAAP Financial Measures, Compliance & Disclosure Interpretations, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), *available at* https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

33. Specifically, for each company, the Proxy Statement fails to disclose the material line items for: (i) Earnings per share; and (ii) Regular dividends per share. In addition, the Proxy Statement fails to disclose any information concerning unlevered free cash flow for each company.

34. Disclosure of the above line item projections is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction.

## Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding Sandler O'Neill's Financial Opinion

35. The Proxy Statement contains the financial analyses and opinion of Sandler O'Neill & Partners, L.P. ("Sandler O'Neill") concerning the Proposed Transaction, but fails to provide material information concerning such.

36. With respect to Sandler O'Neill's *Comparable Company Analyses*, the Proxy Statement fails to disclose: (i) the financial data for each of the companies selected in the MidSouth Peer Group; and (ii) the financial data for each of the companies selected in the Hancock Whitney Peer Group.

37. With respect to Sandler O'Neill's *Analysis of Selected Merger Transactions*, the Proxy Statement fails to disclose all merger transaction comparisons for each of the companies selected in Sandler O'Neill's analysis.

38. With respect to Sandler O'Neill's *Net Present Value Analysis* for MidSouth Bancorp, the Proxy Statement fails to disclose: (i) the inputs and assumptions underlying the selection of multiples ranging from 11.0x to 16.0x; (ii) the inputs and assumptions underlying the selection of multiples ranging from 120% to 175%; and (iii) the inputs and assumptions underlying the selection of discount rates ranging from 11.0% to 15.0%.

39. With respect to Sandler O'Neill's *Net Present Value Analysis* for Hancock Whitney, the Proxy Statement fails to disclose: (i) the inputs and assumptions underlying the selection of multiples ranging from 10.0x to 15.0x; (ii) the inputs and assumptions underlying the selection of multiples ranging from 130% to 230%; and (iii) the inputs and assumptions underlying the selection of discount rates ranging from 9.0% to 13.0%.

40. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Moreover, the disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

41. Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transaction. Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

**Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding the Background of the Proposed Transaction**

42. Finally, the Proxy Statement fails to disclose material information concerning the sales process leading up to the Proposed Transaction.

43. First, the Proxy Statement notes that between December 2018 and March 2019, the Company received multiple nonbinding proposals to acquire the Company from Company A, but the Proxy Statement fails to disclose any of the terms of these proposals.

44. Next, the Proxy Statement notes that "on March 15, 2019, at a special meeting with representatives of Sandler O'Neill and Troutman in attendance, the MidSouth Strategic Direction Committee considered and rejected as inferior the Company B proposal and determined to enter into exclusive negotiations with Hancock Whitney regarding a proposed transaction." However, the Proxy Statement fails to disclose any terms of Company B's "inferior" offer.

45. Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transaction. Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

## COUNT I

**(Against All Defendants for Violations of Section 14(a)
of the Exchange Act and Rule 14a-9 Promulgated Thereunder)**

46. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

47. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

48. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not

contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

49.     Defendants have issued the Proxy Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

50.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

51.     The Defendants knew or were negligent in not knowing that the Proxy Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

52.     The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy Statement, rendering the sections of the Proxy Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the

Proxy Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

53. The Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

54. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

55. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**(Against the Individual Defendants for
Violations of Section 20(a) of the Exchange Act)**

56. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

57. The Individual Defendants acted as controlling persons of MidSouth Bancorp within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of MidSouth Bancorp, and participation in and/or awareness

of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

58. Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

59. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

60. In addition, as set forth in the Proxy Statement sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

61. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

62. As set forth above, the Individual Defendants had the ability to exercise control

over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

63. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class Representative and Plaintiff's counsel as Class Counsel;

B. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

C. Directing the Individual Defendants to disseminate an Amendment to the Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Directing Defendants to account to Plaintiff and the Class for their damages sustained because of the wrongs complained of herein;

E. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: August 19, 2019                                      Respectfully submitted,


                                                  By: /s/ Joshua M. Lifshitz
                                                  Joshua M. Lifshitz
                                                  Email: jml@jlclasslaw.com
                                                  **LIFSHITZ & MILLER LLP**
                                                  821 Franklin Avenue, Suite 209
                                                  Garden City, New York 11530
                                                  Telephone: (516) 493-9780
                                                  Facsimile: (516) 280-7376

                                                  *Attorneys for Plaintiff*

## **CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS**

I, Pinchas Raul, hereby certify that:

1. Plaintiff has reviewed the complaint and authorized the commencement of a lead plaintiff motion and/or filing of a complaint on plaintiff's behalf.
2. I did not purchase the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.
3. I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.
4. My transactions in Msl securities that are the subject of this litigation during the Class Period are attached hereto as Exhibit A.
5. I have not served as or sought to serve as a representative party on behalf of a Class under this title during the last three years.
6. I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the Court, including the award to a representative of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

Executed on 08/19/2019

_____

    Signature

## Exhibit A

My transactions in MidSouth Bancorp, Inc. (MSL) securities that are the subject of this litigation during the class period set forth in the complaint are as follows ("P" indicates a purchase, "S" indicates a sale):

| Security | Date | Sale | Purchase | Number of Shares | Price per Share |
|---|---|---|---|---|---|
| MSL | 8/9/2015 |  | P | 5 | $12.94 |